

Colin Prince
10 North Post Street, Suite 700
Spokane, Washington 99201
509.624.7606
Attorney for Philip Harthill

UNITED STATES MAGISTRATE COURT
Honorable John T. Rodgers

| United States, | No. 19-cr-217-RMP |
|---|---|
| Plaintiff, | Reply Supporting Release |
| v. | |
| Philip Harthill, | |
| Defendant. | |

## I. Supplemental Background

### A. Release Reduces the Risk Mr. Harthill Dies and the Risk of Nonappearance.

The Government argues that because "the proposed release residence is a group home where all bedrooms are shared, the kitchen is shared, bathrooms are shared . . . he has not shown himself to be safer than his current housing,"[1] the Spokane County jail. That conclusion is possible only because the Government appears unaware of the jail's daily mechanics.

If released, it is true that Mr. Harthill would spend his time quarantined with a few other individuals in a house. If not released, Mr. Harthill will remain in the jail, where ***dozens*** of staff circulate nightly; where new arrests are brought in daily; where food trays are passed from the cooks to the stewards and then travel through elevators and hallways; where dozens of inmates are released into cramped spaces to make phone calls to lawyers and families; where dozens of people use the same showers; and where there is a centralized air system blowing infectious disease between cells. Academics write articles about how fast infectious disease travels in prison.[2] Courts call pretrial detention "the ideal environment for the transmission of contagious disease."[3]

---

[1] ECF No. 27 at 7:1–7.
[2] *See, e.g.*, Joseph A. Bick, *Infection Control in Jails and Prisons*, Clinical Infectious Diseases 45(8): 1047-1055 (available at: https://doi.org/10.1086/521910) ("While incarcerated, inmates are at an increased risk for the acquisition of blood-borne pathogens, sexually transmitted diseases, methicillin-resistant Staphylococcus aureus infection, and infection with airborne organisms, such as M. tuberculosis, influenza virus, and varicella-zoster virus.").
[3] *U.S. v. Little*, 2020 WL 1439979, at *2 (S.D.N.Y. Mar. 24, 2020).

1  Even the jail's own staff disagree with the Government: "the chances of COVID-19

2  coming into this building are pretty good," says one deputy quoted in local news.[4]

3  The only group that seems to think prisons will ward off the virus is DOJ itself—

4  although the growing body count in FCI Oakdale (5 dead) and the outbreaks at FCI

5  Butner and Danbury over the last week might give even DOJ's most ardent

6  cheerleaders pause.

7  Mr. Harthill is at lower risk if released.

8  **B.    The Government Omits a Few Facts of Its Own.**

9  The Government accuses the defense of "omit[ting] . . . contact of concern with

10  underage females."[5] That accusation is a bit odd given Mr. Harthill's original brief

11  specifically cited by far the most concerning contact, a video-chat with an underage

12  German girl that Mr. Harthill is alleged to have recorded.[6] A few of the Government's

13  own omissions bear highlighting.

14  First, the Government cites Mr. Harthill's requests for pictures of an

15  undercover agent's supposed 10-year old daughter,[7] but omits that Mr. Harthill was

16  specifically requesting clothed photos—not child pornography.[8]

---

[4] Josh Kelety, *In the already overcrowded Spokane County jail, correctional officers are bracing for COVID-19 to strike*, The Inlander (Mar. 26, 2020) (available at: https://bit.ly/3dvaGBG).
[5] ECF No. 29 at 15:15.
[6] ECF No. It is also odd because any time a brief attempts to summarize 106-pages of discovery and an hour-long audio-recorded interview there are bound to be omissions.
[7] ECF No. 29 at 2:26.
[8] Bates 12.11, 12.14, 12.16.

REPLY
– 2 –

Second, the Government fails to mention it has produced no actual proof that some of the "concerning contacts" were real contacts at all. As Mr. Harthill explained in his hour-long interview with agents, he had no idea if he was chatting with real underage females or just other older men acting out disturbing fantasies.[9] For example, the Government cites alleged contact with an underage female from Coeur d'Alene who claimed to have sex with her grandfather.[10] "I don't know if it's honest or bullshit . . . she could be 50, she could be 20, she could be a man, she could be a woman, I don't know," said Mr. Harthill.[11] Mr. Harthill himself admitted joining messaging chatrooms where he pretended to be a teenager.

Third, the Government fails to mention Mr. Harthill swore—repeatedly and adamantly—he had never and would never touch a child in person. He even volunteered to take a polygraph.[12]

The allegations are surely disturbing, but lacking any evidence of flight, criminal history, drug or mental health problems, the Government relies solely on untested allegations, and the detention hearing, where Mr. Harthill remains presumed innocent, risks devolving into a mini-trial. *See U.S. v. Harris*, 2018 WL 318465, at *5 (E.D. Wis.

---

[9] Interview of Philip Harthill at 50–55 minutes (unbates-numbered).
[10] ECF No. 29 at 4:26.
[11] Interview of Philip Harthill at 51–52:45 minutes (unbates-numbered).
[12] *Id.* At 54: 45.

Reply
– 3 –

Jan. 5, 2018) (detention decisions "are not to be mini-trials") (quoting *U.S. v. Hammond*, 204 F. Supp. 2d 1157, 1165 (E.D. Wis. 2002)).

## II. Analysis

### A. The Bail Reform Act Favors Release.

#### 1. The Nature and Circumstances of the Offense Favor Release.

The Government rightly says the offense alleged is "exceptionally serious,"[13] but that is true of virtually all federal crimes. The alleged offenses are, however, restricted to the digital realm—the Government found no evidence Mr. Harthill had so much as an odd conversation outside a computer with any child despite interviewing his neighborhood. Because the offenses are computer based, the Court can ably impose restrictions—no computers.

#### 2. The Weight of the Evidence Favors Release.

The Government argues the weight of the evidence "is strong and the penalties sufficient to cause Defendant to flee."[14] It is true that the evidence appears strong: Mr. Harthill immediately confessed, detailed devices and programs he used, websites visited, and explained that he knew his conduct was wrong.[15] But just as nearly all federal offense are "serious," nearly all federal penalties are lengthy—that is how America has come to incarcerate more citizens per capita than authoritarian regimes

---

[13] ECF No. 29 at 9.
[14] ECF No. 29 at 27.
[15] *See* Interview of Philip Harthill at 43 mintues (un-bates stamped).

like Russia, Venezuela, or Iran.[16] It is not enough to say "the defendant faces a long time in prison." And the Government forgets that Mr. Harthill has legal defenses (including that his entire confession may be excluded for *Miranda* violations; he expressly requested a lawyer—"I'd like to have an attorney, but I can't afford one"—but was not given one).[17]

The facts don't support the Governement's argument. Mr. Harthill lives on social security, doesn't own a running car, and has no friends or family that would aid flight. As Mr. Harthill told agents, he moved to Rosalia, Washington, to die and be buried in the same plot as his grandparents.[18] He isn't going anywhere.

And the statistics don't bear out the Government's argument. Pretrial flight is exceedingly rare. For defendants like Mr. Harthill with no criminal history, no prior arrests, no failures to appear, the nonappearance rate is 1% and the rearrest rate is 2%:[19]

---

[16] *See* Roy Walmsely, *World Prison Population List*, Int'l Cntr. for Prison Studies (10th ed. 2013) (available at: https://bit.ly/2UK8iQ1). The United States incarcerated 716 persons per 100,000; Russia trails at 475, Iran at 284, Venezuela barely trying at 161.
[17] Interview of Philip Harthill at 2:18.
[18] Interview of Philip Harthill at 28:15 minutes.
[19] Thomas H. Cohen, Ph.D., U.S. Dept. of Justice, Bur. of Justice Statistics, *Pretrial Release and Misconduct in Federal District Courts, 2008-2010* (Nov. 2012) (available at: https://bit.ly/2XbZswf). The DOJ's report with these statistics was last produced for the years 2008–2010.

| Criminal history | Number of released defendants | At least one violation | Failed to appear | Technical violations of bond conditions | A rearrest for new offense* | Release revoked |
|---|---|---|---|---|---|---|
| All defendants | 101,622 | 19% | 1% | 17% | 4% | 11% |
| **Number of prior arrests** | | | | | | |
| None | 38,009 | 10% | 1% | 9% | 2% | 5% |
| 1 | 14,902 | 16 | 2 | 14 | 3 | 8 |
| 2 to 4 | 21,909 | 22 | 2 | 20 | 4 | 12 |
| 5 to 10 | 16,044 | 28 | 2 | 26 | 6 | 17 |
| 11 or more | 10,547 | 33 | 2 | 29 | 8 | 21 |

TABLE 12
Misconduct of defendants released pretrial for cases disposed in federal district courts, by criminal history, FY 2008–2010

Percent of released defendants who had—

Put another way, the statistics suggest Mr. Harthill is 99% likely to show up and 98% likely not to break the law while on pretrial release. Those are good betting odds.

### 3. Mr. Harthill's Personal History Favor's Release.

Mr. Harthill has no criminal history, was employed his entire life, was an honorably-discharged Vietnam veteran (who served 3 tours no less), has no history of violence, hands-on conduct against any minor, no drug use or history of mental illness—all of which favors release.

### 4. Any Danger to the Community Can Be Reduced by Conditions.

The Government alleges conduct that is entirely computer-based, and the Court can bar Mr. Harthill from possessing a computer or a phone capable of accessing the internet.

In response to that self-evidence condition, the Government argues that "virtually all [conditions] hinge on the defendant's good faith compliance."[20] Sometimes that's true; here it is not. The Probation office can sweep Mr. Harthill's

---

[20] ECF No. 29 at 14–15.

residence and search for computers any time it pleases. The House of Mercy itself monitors electronic devices. The ban on computers is eminently enforceable. And apart from the ease of enforcement, the Government fails to show Mr. Harthill is so desperate to get back into chat-rooms that he would risk additional federal charges by defying pretrial conditions. To the contrary, Mr. Harthill's arrest conduct shows nothing but compliance.

### III. Conclusion

For the reasons above, the Court should release Mr. Harthill.

Dated: April 6, 2020.

Federal Defenders of Eastern Washington & Idaho
Attorneys for Philip Harthill

s/Colin G. Prince
Colin G. Prince, WSBA No. 43166
10 North Post Street, Suite 700
Spokane, Washington 99201
t: (509) 624-7606
f: (509) 747-3539
Colin_Prince@fd.org

## Service Certificate

I certify that on April 6, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System, which will notify Assistant United States Attorneys: Ann Wick.

s/Colin G. Prince
Colin G. Prince, WSBA No. 43166
10 North Post Street, Suite 700
Spokane, Washington 99201
t: (509) 624-7606
f: (509) 747-3539
Colin_Prince@fd.org