FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Nov 24, 2021

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>PHILIP MARION HARTHILL,<br><br>Defendant. | NO: 2:19-CR-217-RMP<br><br>ORDER DENYING DEFENDANT'S MOTION TO DISMISS |

BEFORE THE COURT is Defendant Philip Marion Harthill's Motion to Dismiss, ECF No. 51. The Court heard oral argument on the motion on October 27, 2021. Defendant, who is not in the custody of the U.S. Marshal, was present and represented by Assistant Federal Defender Colin G. Prince. Assistant United States Attorney Ann T. Wick appeared on behalf of the Government.

The Court heard testimony from Mr. Harthill's state criminal defense attorney, Steven Martonick, from Defendant, and from Washington State Patrol Sergeant Daniel McDonald. The Court admitted exhibits and heard arguments from counsel. Having reviewed the parties' filings, heard the argument and

ORDER DENYING DEFENDANT'S MOTION TO DISMISS ~ 1

testimony presented at the evidentiary hearing, and reviewed the relevant law, the Court is fully informed.

## BACKGROUND

In June 2019, "Phil22" interacted with an undercover agent from the United Kingdom Police, Eastern Regional Special Operations Unit ("ERSOU"). ECF No. 56-1 at 2. "Phil22," later identified as Mr. Harthill, requested pictures of the undercover agent's supposed 10-year-old daughter. *Id*. Their conversation moved onto the Kik messenger application, where Mr. Harthill had the user ID "phil103151008." *Id.* He again requested photos of the agent's daughter and sent three child pornography images of his own. *Id.* Following several more conversations between Mr. Harthill and the undercover agent, the ERSOU referred the investigation to the Department of Homeland Security Investigations ("HSI"). ECF Nos. 56-1, 56-2.

Two months later, HSI learned that one of its agents had received a tip from Microsoft stating that the Internet Protocol address 50.52.113.27 transmitted a child pornography image back in January 2019. ECF No. 58-1 at 5. HSI Special Agent Shannon Hart requested an administrative subpoena from the internet provider, which produced Mr. Harthill's name and address. *Id.* at 6.

On August 29, 2019, HSI special agents executed a federal search warrant at Mr. Harthill's residence in Rosalia, Washington. ECF No. 58-3 at 2. The warrant included electronic devices and the examination of devices located at the residence. *Id.* Agents found Mr. Harthill viewing and texting in a kid's chat

ORDER DENYING DEFENDANT'S MOTION TO DISMISS ~ 2

website. ECF Nos. 58-2, 58-3 at 2. Computer Forensic Analyst ("CFA") Bjorn Olson reviewed the devices found at the resident and found numerous images on Mr. Harthill's computer depicting minor children engaged in sexually explicit conduct. ECF No. 58-3 at 2–3.

HSI Special Agent Trinity Street and Washington State Patrol Detective Sergeant Dan McDonald interviewed Mr. Harthill, who admitted that he had downloaded child pornography and that he had sexual images of underage girls on his computer. ECF No. 56-5 at 4. Mr. Harthill further admitted to meeting underage girls online. *Id.* Following the search warrant, HSI agents contacted Mr. Harthill's neighbors to identify potential victims. ECF No. 56-6 at 2–4.

After Mr. Harthill's interview, Special Agent Street and Sergeant McDonald "consulted with both the Whitman County Prosecutor and the Assistant United States Attorney concerning admissions made by [Mr.] Harthill during his interview." ECF No. 56-5 at 4. Sergeant McDonald believed that Mr. Harthill posed a serious threat to the community. ECF No. 58-3 at 3. "Due to his admitted sexual interest in underage girls and access to local children," Mr. Harthill was arrested and booked into Whitman County jail for Possession of Depictions of Minors Engaged in Sexually Explicit Conduct. ECF No. 56-5 at 4.

Mr. Harthill alleges that the federal agents knew that if he was arrested on federal charges, he would be released on pretrial conditions, as that is the "standard in Eastern Washington." ECF No. 51 at 8; (citing ECF 52-7). Mr. Harthill further alleges that the implication of money bail for Washington State charges would

ORDER DENYING DEFENDANT'S MOTION TO DISMISS ~ 3

have been apparent to the federal agents. *Id*. at 9–10. Thus, "[t]o avoid federal pretrial release and get Mr. Harthill into a jail cell," Mr. Harthill contends that prosecutors and agents agreed to arrest him on a state child-pornography possession charge instead of federal charges. *Id*. at 8–9.

On August 30, 2019, the state court set bail at $10,000 cash or $100,000 surety bond. ECF No. 58-4. On August 31, 2019, Sergeant McDonald conducted a limited forensic review of the contents of Mr. Harthill's laptop computer and cell phone and discovered thousands of images and videos of minors engaged in sexually explicit conduct. ECF No. 52-9 at 8–10.

On September 4, 2019, the State charged Mr. Harthill with four counts of Possession of Depictions of a Minor Engaged in Sexually Explicit Conduct in the First Degree and one count of the same in the Second Degree. ECF No. 56-9 at 2–5. Mr. Harthill was set to appear for a pretrial conference on October 11, 2019. That morning, Whitman County Prosecutor, Dan LeBeau, sent the following email to Mr. Harthill's public defender, Steven Martonick: "Hi Steve, just a reminder to see if [Mr.] Harthill wants to waive speedy and stay in Whitman County until December (so waive to allow for a January trial) or get indicted by the AUSA sooner and wait in Spokane." ECF No. 52-11 at 2.

On November 1, 2019, Mr. Harthill filed a motion to continue trial "[t]o combine or resolve with a federal matter" and waived his right to a speedy trial through January 31, 2020. ECF Nos. 58-7 at 2, 58-8. The court granted the continuance and reset trial for January 21, 2020. ECF No. 58-7 at 3. Around this

ORDER DENYING DEFENDANT'S MOTION TO DISMISS ~ 4

same time, AUSA Ann Wick and Whitman County Prosecutor LeBeau purportedly discussed a possible global resolution of Mr. Harthill's charges. *See* ECF No. 58 at 6 (the Government maintaining that defense counsel was included in discussions of global resolution and that "[h]aving been advised of the federal government's intention of prosecuting Defendant, Defendant considered it in his best interest to seek a continuance of his state case"); *but see* ECF No. 59-1 (Mr. Martonick stating that "[t]here were no negotiations at any time in this case, global resolution or otherwise").

The state discovery consisted of 23 pages, including the charging documents, the jail booking sheet, a criminal history check, the required probable cause statement, and a report noting the contents of the digital drives seized. ECF No. 56-9. Mr. Harthill argues that his confession was never produced despite being ordered by the court to be produced. ECF No. 51 at 13; *see also* ECF No. 56-8 at 2 (order granting Defendant's motion "[f]or discovery of all oral, written or recorded statements made by defendant to investigating officers or to third parties and in the possession of the plaintiff").

Between September and December 2019, Special Agent Street reviewed the computer forensic image files extracted by CFA Olson from Mr. Harthill's computer, cell phone, and digital devices. ECF No. 58-10; *see also* ECF No. 58-9 (On November 1, 2019, Sergeant McDonald asks CFA Olson about "the status of the evidence as the suspect was still incarcerated").

ORDER DENYING DEFENDANT'S MOTION TO DISMISS ~ 5

On December 18, 2019, the federal government indicted Mr. Harthill. ECF No. 1. On January 8, 2020, the state charges were dismissed without prejudice. *See* ECF No. 56-10 ("Good cause exists as the primary investigators for this case were with the federal government. The Federal government has indicted the defendant and has a detainer in place for him to be prosecuted federally.").

When Mr. Harthill was arrested on federal charges, he already had lost his lease on his home and he was unable to offer pretrial services a release address during his appearance in federal court on January 10, 2020. ECF No. 51 at 16. On April 8, 2020, Mr. Harthill was released to the House of Mercy. ECF No. 35.

Between the filing of the indictment and filing the present motion, Mr. Harthill moved to continue trial five times and filed a waiver of his speedy trial rights with each motion for continuance. ECF Nos. 21–22, 37, 39, 43–45, 47–49, 62–63.

## LEGAL STANDARD

Under the Speedy Trial Act, federal authorities must "indict and bring to trial incarcerated individuals within specified time periods." *United States v. Benitez*, 34 F.3d 1489, 1493 (9th Cir. 1994); *see* 18 U.S.C. § 3161(b) ("Any information or indictment charging an individual with the commission of an offense shall be filed within thirty days from the date on which such individual was arrested or served with a summons in connection with such charges."). "Only a 'federal arrest' triggers the running of the thirty day time period set forth in § 3161(b)." *Benitez*, 34 F.3d at 1493. However, "Speedy Trial Act time periods

ORDER DENYING DEFENDANT'S MOTION TO DISMISS ~ 6

may be triggered by state detentions that are merely a ruse to detain the defendant solely for the purpose of bypassing the requirements of the Act."[1] *Id.* at 1494. This is because "[t]he Speedy Trial Act would lose all force if federal criminal authorities could arrange with state authorities to have the state authorities detain a defendant until federal authorities are ready to file criminal charges." *Id.*; *see also United States v. Cepeda-Luna*, 989 F.2d 353, 357 (9th Cir. 1993).

Defendant has the burden of establishing a violation of the Speedy Trial Act. *See* 18 U.S.C. § 3162(a). In order for the "ruse exception" to apply, the defendant must (1) demonstrate that the "primary or exclusive purpose" of the state charge was to hold him for future criminal prosecution, *United States v. De La Pena-Juarez*, 214 F.3d 594, 598 (5th Cir. 2000), and (2) present evidence of collusion between federal criminal authorities and state authorities.[2] *Cepeda-Luna*, 989 F.2d

---

[1] Many "ruse exception" cases involve civil confinement by immigration authorities. The Eleventh Circuit has refused to apply the "ruse exception" in cases involving incarceration under state criminal authority because of the independent sovereignty of the States. *See United States v. Alvarado-Linares*, 698 Fed. Appx. 969, 974 (11th Cir. 2017).

[2] Some courts use the disjunctive "or" in describing the two factors considered for the ruse exception to apply, *see, e.g., United States v. Garcia-Martinez*, 254 F.3d 16, 20 (1st Cir. 2001). However, cases in the Ninth Circuit imply that collusion is required. *See United States v. Benitez*, 34 F.3d at 1495 n. 3; *see also Cepeda-Luna*, 989 F.2d at 358 ("[T]here is no evidence of collusion between federal criminal and civil authorities which would mandate the application of the provisions of the Act to civil detentions.").

ORDER DENYING DEFENDANT'S MOTION TO DISMISS ~ 7

at 357 (citing *United States v. Cordova*, 537 F.2d 1073, 1076 (9th Cir. 1976)); *see also United States v. Triplett*, 158 Fed. Appx. 768, 770 n. 2 (9th Cir. 2005) (noting that a "ruse" and "collusion" are "inextricably linked"). "The presence or absence of collusion is a question of fact." *Triplett*, 158 Fed. Appx. at 770.

## DISCUSSION

**Statutory Speedy Trial Rights**

The Government preliminarily argues that Defendant's statutory rights were not violated because his original trial date was set to occur within 70 days of his arraignment. ECF No. 58 at 7 (citing 18 U.S.C. § 3161(c)(1)). A defendant must be brought to trial within 70 days after the indictment or arraignment, whichever is later. 18 U.S.C. § 3161(c)(1). Failure to comply with the 70-day deadline under § 3161 requires dismissal of the criminal complaint or indictment. 18 U.S.C. § 3162(a)(1), (2).

Certain periods of delay are excluded in calculating either the time within which an indictment must be filed or the time within which trial must commence. For example, any delay resulting from other proceedings concerning a defendant, including delay resulting from trial on other charges, is excluded for speedy trial purposes. 18 U.S.C. § 3161(h)(1)(B). Also excluded is any delay resulting from a continuance granted "at the request of the defendant or his counsel" based on findings that "the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial." 18 U.S.C. § 3161(h)(7)(A).

Defendant was indicted in federal court on December 18, 2019. ECF No. 1. He was arraigned on January 10, 2020. Under § 3161, the later date controls for purposes of the 70-day speedy trial window. 18 U.S.C. § 3161(c)(1); *United States v. King*, 483 F.3d 969, 972 (9th Cir. 2007). The first pretrial order set trial for March 9, 2020, which is 59 days after the arraignment.

On February 18, 2020, Defendant moved to continue his trial date and expressly waived "his 70-day statutory speedy trial right with respect to the period covered by the continuance." *Id.* at 7–8. He later renewed his motion for a continuance and filed additional waivers on four other occasions prior to bringing the instant motion. The time period between the original trial date and the continued trial date are excluded for purposes of speedy trial rights. 18 U.S.C. § 3161(h)(7)(A). Therefore, Defendant's speedy trial rights regarding the 70-day window under 18 U.S.C. § 3161(c)(1) were not violated.

The relevant inquiry for the current motion turns on whether the ruse exception applies for purposes of an alleged speedy trial violation under 18 U.S.C. § 3161(b).

**Ruse Exception**

The thirty-day window set forth in § 3161(b) is triggered by a federal arrest. *Benitez*, 34 F.3d at 1493. The fact that an individual's arrest on state charges follows "from a federal investigation is not sufficient to create a federal arrest." *Id.* at 1494. However, evidence of "collusion between state and federal authorities" provides a "ruse" exception to the general rule regarding federal arrests. *United*

ORDER DENYING DEFENDANT'S MOTION TO DISMISS ~ 9

*States v. Boyd*, 416 Fed. Appx. 599, 600 (9th Cir. 2008). Also relevant is whether the charges filed in the federal indictment are "identical to those in the State criminal complaint." *United States v. Ballam*, 932 F. Supp. 2d 1224, 1232.

Here, Mr. Harthill argues that the ruse exception should apply because (1) there is evidence that federal and state authorities colluded to detain him on state charges; (2) the state and federal charges are essentially identical; and (3) the state proceedings failed to proceed in typical fashion, suggesting that the state charges were a mere ruse to bypass Mr. Harthill's speedy trial rights. *See* ECF No. 51 at 22–26.

**1.    Collusion**

Mr. Harthill points to three key facts as evidence of collusion in this case. First, federal and state officers "consulted with both the Whitman County Prosecutor and the Assistant United States Attorney" prior to Mr. Harthill's arrest. ECF No. 52-5 at 4. Second, the Whitman Prosecuting Attorney's October 2019 email to Mr. Harthill's defense counsel inquired as to whether Mr. Harthill will "waive speedy and stay in Whitman County . . . or get indicted by the AUSA sooner and wait in Spokane." ECF No. 52-11.[3] Third, the state charges were

---

[3] Defendant argues that there is an "implicit threat" in the email from Mr. Lebeau because the conditions of the Spokane County jail are harsher than those in Whitman County. According to Gabe Caballero, Chief Investigator for the Federal Defenders of Eastern Washington and Idaho, "the discrepancy between the harsh

ORDER DENYING DEFENDANT'S MOTION TO DISMISS ~ 10

dismissed on the basis that "the primary investigators for this case were with the federal government" and "[t]he Federal government has indicted the defendant and has a detainer in place for him to be prosecuted federally." ECF No. 52-10; *see also* ECF No. 59 at 12 (Defendant argues that "everything about the investigation was federal" from "start to finish"). The Government counters that Mr. Harthill fails to sufficiently demonstrate collusion between federal and state authorities. ECF No. 58 at 8.

"[T]he fact that federal authorities actively participate in an investigation does not mandate application of the Speedy Trial Act." *Benitez*, 34 F.3d at 1493 (citing *Cepeda-Luna*, 989 F.2d at 356). "[C]ommunication and even coordination between the state and federal prosecutors does not itself compel the conclusion that the federal prosecutors were using the state prosecution as a ruse." *Triplett*, 158 Fed. Appx. At 770 (citing *United States v. Ortiz-Lopez*, 24 F.3d 53, 55 (9th Cir. 1994)). Mr. Harthill does not dispute that cooperation between the state and federal government is permissible, but he argues that there are additional suspicious factors in this case. ECF No. 51 at 26 ("[T]he mere participation of federal investigators isn't enough to trigger the speedy-trial clock. But the circumstances of Mr. Harthill's arrest, the calls to state and federal [prosecutors],

---

conditions [at] Spokane Count[y] jail and the relatively decent conditions [at] Whitman County jail is widely known." ECF No. 57.

ORDER DENYING DEFENDANT'S MOTION TO DISMISS ~ 11

the failure of the Whitman County prosecution to produce discovery or the confession, the LeBeau email, all show this was a ruse prosecution.").

In *Triplett*, the Ninth Circuit noted that certain evidence suggested that "the state prosecution was a mere formality[,]" including the fact that the state district attorney "intended to encourage the filing of federal charges." 158 Fed. Appx. at 770. Nonetheless, in relying upon its previous decision in *Benitez*, the court determined that the lack of evidence surrounding the state's intentions for prosecution weighed more heavily on the court's collusion analysis. *Id.* at 770–71 ("Significantly, there is no evidence to suggest that District Attorney Caleb would not have prosecuted Triplett had the federal authorities ultimately decided not to."); *see also Benitez*, 34 F.3d at 1494 (noting that "the continued contact between state and federal authorities combined with the state's dismissal of the first complaint and filing of a new complaint [was] suspicious" but holding that the district court's finding that the state prosecution was brought in good faith was not clearly erroneous based upon state attorney's testimony that the state intended to proceed with its prosecution if the federal authorities did not file charges).

At the evidentiary hearing in this case, the Government did not call Whitman County Prosecutor Dan Lebeau, nor was a declaration or affidavit from Mr. Lebeau filed. However, Mr. Martonick testified that Mr. Lebeau told him not to spend too much time on the case because Mr. Lebeau believed that the federal government would be taking over. Separately, Defendant testified that, during his arrest, he overhead two officers saying it was important that Defendant remain in

ORDER DENYING DEFENDANT'S MOTION TO DISMISS ~ 12

custody until he could be turned over to the federal government. On cross-examination, Defendant conceded that he did not know which officers he overheard speaking. Defendant also confirmed that the conversation occurred outside, while he was seated in the backseat of a patrol car with the car's windows rolled up.

The Court is persuaded that multiple factors suggest that the circumstances surrounding Mr. Harthill's arrest and the communications between state and federal authorities are, at minimum, suspicious. HSI agents oversaw the entire investigation into Mr. Harthill, including by obtaining relevant search warrants. The State's involvement in the case came about only because of HSI's request for state authorities, including Sergeant McDonald, to assist federal agents during the execution of the search warrants. Both Special Agent Street and Sergeant McDonald interviewed Defendant, the latter of whom confessed to downloading and viewing child pornography. Sergeant McDonald became concerned that Defendant posed a danger to the community and formally arrested Defendant after speaking to Whitman County prosecuting attorney Dan Lebeau. Special Agent Street contacted Assistant U.S. Attorney Ann Wick, but a federal arrest was not made. Special Agent Street did not provide any testimony, let alone a reason for this fact.

Despite these suspicious circumstances, the record before the Court also demonstrates cooperation between state and federal authorities, at least during the investigatory and arrest phase of the case. Sergeant McDonald testified that he

ORDER DENYING DEFENDANT'S MOTION TO DISMISS ~ 13

learned about particularly troubling child pornography materials extracted from Defendant's devices prior to making an arrest. Sergeant McDonald also was present for the interview with Defendant following execution of the search warrant, at which point Defendant confessed to viewing and downloading child pornography. Based on the totality of the circumstances, including public safety concerns for neighborhood children, Sergeant McDonald decided to arrest Defendant.

The only evidence suggesting collusion in the time leading up to Defendant's arrest is the conversation Defendant allegedly overheard from two officers about the need to keep him in custody. However, the Court finds that Defendant's statement lacks credibility given his inability to recall certain details about the officers in combination with his location inside the patrol car at the time the conversation allegedly occurred. This factor weighs against application of the ruse exception.

**2.    Similarity of State and Federal Charges**

Defendant contends that the state charges against him were virtually identical to the federal charges and that this similarity favors applying the ruse exception. ECF No. 51 at 23; *see United States v. Okuda*, 675 F. Supp. 1552, 1555 (D. Haw. 1987) (determining that the administrative and criminal charges filed against the defendants were "identical" and that the INS detention was used as a substitute for criminal arrest). Here, the Government sought and obtained an indictment which included additional charges not charged by the State:

ORDER DENYING DEFENDANT'S MOTION TO DISMISS ~ 14

transportation of child pornography, receipt of child pornography, and production/attempted production of child pornography. *Compare* ECF No. 1 (federal indictment) *with* ECF No. 56-9 at 2–5 (state information). This factor weighs against application of the ruse exception.

### 3. State Proceedings

Lastly, Defendant argues that the state proceedings against him did not proceed in a "typical fashion," thus suggesting that the state prosecution was "a mere placeholder." ECF No. 51 at 24–26. Defendant notes that the state prosecutor failed to produce "more than a handful of discovery pages," let alone Defendant's confession as ordered by the court, and the state prosecutor ignored "written discovery orders from the court." *Id.* at 23. Defendant also contends that the State failed to discuss a potential plea resolution with him or his attorney. *Id.*; *see also* ECF No. 59-1 at 1 (Mr. Martonick, Defendant's public defender for the state proceedings, notes that there were no negotiations at any time in the case). The Government does not respond to these arguments in its briefing. At the hearing, the Government, without citing to any authority, suggested that moving to dismiss state charges once the federal government filed its own charges qualifies as a form of settlement offer.

The Court is concerned as to whether the state charges against Mr. Harthill were little more than a formality. Mr. Martonick alleges that Mr. Lebeau told him, at the outset of the state case, that the federal government would soon be taking over. The Court notes that the Government failed to dispute this allegation, nor did

ORDER DENYING DEFENDANT'S MOTION TO DISMISS ~ 15

the Government file an affidavit from Mr. Lebeau. *See, e.g.*, *United States v. Boyd*, 416 Fed. Appx. 599, 600 (9th Cir. 2008) (remanding for evidentiary hearing on possible collusion based on evidence that "from the time Boyd was arrested on state charges . . . the state and federal authorities anticipated that he would be charged federally and that the state charges would be dismissed"). On remand in *Boyd*, the district court concluded that the delays in the state prosecution were not done to bypass the defendant's speedy trial rights and the Ninth Circuit affirmed. *United States v. Boyd*, 392 Fed. Appx. 595 (9th Cir. 2010). At the evidentiary hearing in *Boyd*, the district attorney in charge of the state case testified that she was "uncertain whether a federal indictment against Boyd would issue." *Id.* at 597. She also stated that "she was ready, willing, and able to proceed with Boyd's state trial in November 2005." *Id.* To reiterate, no such evidence exists in this record.

The Government points to the fact that the state case was dismissed without prejudice "to allow[] the state prosecutor to see what result occurs in federal court before deciding whether re-filing a state case is necessary to protect the community." ECF No. 58 at 13. In *Triplett*, the Ninth Circuit affirmed a district court's decision to deny dismissal for this very reason. *See* 158 Fed. Appx. at 770–71 ("Significantly, there is no evidence to suggest that District Attorney Caleb would not have prosecuted Triplett had the federal authorities ultimately decided not to.") (citing *Benitez*, 34 F.3d at 1495). Moreover, as in *Triplett*, Sergeant McDonald had a valid reason to arrest Defendant on state charges for possession of

ORDER DENYING DEFENDANT'S MOTION TO DISMISS ~ 16

child pornography and Sergeant McDonald's forensic investigation following Defendant's arrest suggests that the state detention was not "'solely for the purpose of bypassing the requirements of the Speedy Trial Act.'"[4] *Id.* at 770 (quoting *Cepeda-Luna*, 989 F.2d at 357). Sergeant McDonald testified that he made the decision to arrest Defendant on state charges based on the totality of the circumstances and the need to protect the community. Specifically, Sergeant McDonald worried that Defendant had committed "hands-on" offenses to children in his neighborhood. The Court concludes that this factor weighs against application of the ruse exception.

**Bad Faith or Deliberate Intent**

Beyond the need to show collusion, the Government contends that Defendant must demonstrate proof of a deliberate intent to deprive Defendant of his speedy trial rights. ECF No. 58 at 9 (citing *United States v. Alvarez*, No. CR-05-2032-FVS, 2005 WL 2614731 at *2 (E.D. Wash. Oct. 14, 2005)); *see also United States v. Michaud*, 268 F.3d 728, 735 (9th Cir. 2001) ("A finding of collusion requires proof of a deliberate intent to deprive a defendant of her federal

---

[4] Defendant suggests that Sergeant McDonald's inquiry regarding the status of the federal investigator's forensic review was based purely on the state's concern that "Mr. Harthill was being held for so long without a federal indictment." ECF No. 59 at 11. But Sergeant McDonald's inquiry, based on the fact Defendant was still in custody, does not reveal whether the inquiry was for the benefit of the State's case against Defendant, or the subsequent case brought by the United States.

ORDER DENYING DEFENDANT'S MOTION TO DISMISS ~ 17

procedural rights."). Mr. Harthill argues that "courts generally do not and should not mandate a bad-faith showing" and that, for the present motion, it is enough that the officers' and prosecutors' alleged "primary purpose was holding Mr. Harthill for later prosecution." ECF No. 51 at 27.

Mr. Harthill also correctly notes that the requirement for "deliberate intent" in *Michaud* did not involve an alleged speedy trial violation. *See Michaud*, 268 F.3d at 733 (discussing the defendant's claims that state and federal officers colluded "to deprive her of her Sixth Amendment right to counsel and her rights" to prompt presentment before a magistrate judge); *see also* ECF No. 59 at 6 ("To be sure, *Michaud* discusses collusion, but not in the context of a speedy-trial claim at all."). Still, *Michaud* remains persuasive, particularly given its broad application of a deliberate intent requirement to "federal procedural rights," which appears to include speedy trial rights. 268 F.3d at 735; *See also United States v. Henriquez-Castillo*, 307 Fed. Appx. 85, 86 (9th Cir. 2009) (recognizing that the ruse exception to the Speedy Trial Act prevents situations where "the federal authorities were acting with a deliberate intent to deny [the defendant's speedy trial] rights" (internal quotation marks omitted)). The Court finds that Defendant has not made a requisite showing of deliberate intent to deprive him of his speedy trial rights.

## CONCLUSION

Although the Court is concerned about the circumstances surrounding Defendant's arrest and state prosecution, the Court finds that the state charges against Defendant were brought in good faith, based in part on Defendant's

ORDER DENYING DEFENDANT'S MOTION TO DISMISS ~ 18

confession to committing multiple child pornography crimes in a joint interview with Sergeant McDonald and Special Agent Street.  Relevant case law demonstrates that bad faith or deliberate intent should be considered when determining whether the ruse exception applies for alleged speedy trial violations. *Henriquez-Castillo*, 307 Fed Appx. At 86; *see also United States v. Gorman*, 314 F.3d 1105, 1115 (9th Cir. 2002) (affirming denial of the defendant's motion to dismiss for a speedy trial violation because "[t]his is not a case where . . . hearings were 'deliberately refused with intent to evade the Speedy Trial Act.'" (quoting *United States v. Clymer*, 25 F.3d 824, 830–31 (9th Cir. 1994))).  No such showing of deliberate intent has been met in this case.

Accordingly, **IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss, **ECF No. 51**, is **DENIED**.

**IT IS SO ORDERED**.  The District Court Clerk is directed to enter this Order and provide copies to counsel.

**DATED** November 24, 2021.

*s/ Rosanna Malouf Peterson*
ROSANNA MALOUF PETERSON
United States District Judge