

Colin Prince
Chief Appellate Attorney
10 North Post Street, Suite 700
Spokane, Washington 99201
509.624.7606
Attorney for Philip Harthill

# United States District Court
Honorable Rosanna M. Peterson

| | |
|---|---|
| United States, | No. 19-cr-217-RMP |
| Plaintiff, | Sentencing Memorandum |
| v. | |
| Philip Harthill, | |
| Defendant. | |

# I. Introduction

Philip Harthill respectfully requests a sentence of 10-years incarceration and 5-years supervised release. In an online chatroom, he encouraged a 9-year old minor to expose herself and screen-captured the video. Now he faces at least a decade-long sentence. Given that he is 74-years old, a mandatory-minimum sentence may likely be a life sentence. And even if he lives to see freedom again, Mr. Harthill will almost certainly spend the rest of his life on supervised release. His offense is serious, but he poses little risk of recidivism, and given his age and the nature of the offense, a 10-year sentence is sufficient but not more than necessary.

# II. Background

Mr. Harthill's background is relatively straightforward and, like many child-pornography offenders, gives little hint that he would one day wind up sentenced for a federal crime. Other than being adopted, his childhood is unremarkable. His adopted parents were attentive; he graduated high school in 1965 and then served three tours in Vietnam.[1] After an honorable discharge, Mr. Harthill completed a bachelor's degree in biology at Cal Poly. He worked as a lab technician, in security, and late in life, at a Target store.[2] He was always employed.

---

[1] *See* PSR ¶¶ 79, 83.

[2] *See* PSR ¶¶ 80–82; *see also* Report of Robert Cosby, Psy. D. at 5 ("Cosby Report").

Sentencing Memo
– 1 –

Mr. Harthill's offense is tied, as noted in the attached expert psycho-sexual evaluation, to his social isolation. It is worth addressing how that came about. Mr. Harthill married in 1998 and cared for his wife full-time after she was disabled in a terrible car accident until her death in 2014.[3] Before her death, Mr. Harthill and his wife had visited the Rosalia area because his family had long-ago lived nearby, and he promised his wife, who was charmed by region, that they would be buried together there.[4] So after her death, with no family or friends left, Mr. Harthill moved to Rosalia to die. At the time of the offense, he was living alone in a trailer with virtually no social contact. His sole escape was a computer.

In preparing for sentencing, Mr. Harthill met with Robert Cosby, Psy. D., a psychologist who assessed Mr. Harthill's mental health and likelihood of recidivism. The evaluation is revealing, detailing his progression into child pornography. After his wife's death, he was "lonely and bored" and found an outlet in computers. He began looking at adult pornography and was drawn to genres involving "teaching," "first-time themes," "cheerleading uniforms or school-girl outfits."[5] He also found social interaction in chat websites.[6] When asked what he thought the interest was, Mr.

---

[3] PSR ¶ 65.

[4] *See* Cosby Report at 2.

[5] Cosby Report at 7.

[6] *Id.*

Sentencing Memo
- 2 -

Harthill explained that he "liked the thought of being young . . . . It would be nice not to be old and decrepit. That's part of the fantasy."[7]

From there, Mr. Harthill progressed to trading child pornography and engaging with minors through online chat forums.

On that point, it is worth highlighting something Mr. Harthill told investigators during a pre-charge interview. Mr. Harthill explained that he understood his interactions as "a fantasy, it's not real." He messaged with people *claiming* to be minors, but he did not always know if it was true—indeed, he sometimes lied about his age online, saying he was a teenager. As he told Probation, "he did not think he was hurting anyone, something he knows differently now."[8] (To be clear, in the offense of conviction, there is no doubt Mr. Harthill understood that he was conversing with a minor.)

### III. Discussion

At sentencing, courts should impose only what is necessary to achieve the Sentencing Reform Act's goals—and nothing more. *U.S. v. Ressam*, 679 F.3d 1069, 1089 (9th Cir. 2012) ("[a] substantively reasonable sentence is one that is 'sufficient, but ***not greater than necessary***'") (quoting 18 U.S.C. § 3553(a) (emphasis added)).

---

[7] *Id.*

[8] PSR ¶ 32.

Although Guideline ranges are relevant, courts "may not presume that the Guideline range is reasonable," *Gall v. U.S.*, 552 U.S. 38, 49–50 (2007); instead, they must focus on deterrence, retribution, incapacitation, and rehabilitation. *See* 18 U.S.C. § 3553(a)(1), (2)(A)–(D);[9] *see also Rita v. U.S.*, 551 U.S. 338, 366 (2007) (Stevens, J., concurring) (noting guidelines are "truly advisory"). Courts are "free to make [their] own reasonable application of the § 3553(a) factors, and to **reject** (after due consideration) the advice of the Guidelines"—which should not have "any thumb on the scales." *Kimbrough*, 552 U.S. 85, 113 (2007) (Scalia, J., concurring) (emphasis added).

A sentence of 10-years incarceration and 5-years supervised release reflects the Sentencing Reform Act's goals for two reasons:

***First***, a ten-year sentence must be considered particularly grave in light of a driving factor at this sentencing: Mr. Harthill's age. He is 74-years old, and a mandatory-minimum 10-year sentence may likely end up a life sentence. The Ninth Circuit has highlighted the gravity of potential *de facto* life sentences—and that they should not be imposed lightly. In *United States v. Lee*, 725 F.3d 1159 (9th Cir. 2013), a

---

[9] "Deterrence, incapacitation, and rehabilitation are prospective and societal—each looks forward and asks: What amount and kind of punishment will help make society safe? In contrast, retribution imposes punishment based upon moral culpability and asks: What penalty is needed to restore the offender to moral standing within the community?" *United States v. Cole*, 2008 WL 5204441, at *4 (N. D. Ohio Dec. 11, 2008).

drug-trafficking defendant, aged 72, received a 96-month sentence that was reversed for multiple sentencing errors. In remanding, the Ninth Circuit highlighted that an 8-year sentence "is likely to be the equivalent of a life sentence and thus a verdict that Lee will die in prison." *Id.* at 1169. And that kind sentence "should certainly give pause to a sentencing court" because "[t]here is a worthy tradition that death in prison is not to be ordered lightly." *Id.* (citing *U.S. v. Wurzing*, 467 F.3d 649, 652 (7th Cir. 2006)). In remanding, the Ninth Circuit specifically instructed the district court to "give further consideration at resentencing to Lee's age and the likelihood that she will die in prison." *Id.* at 1169. The *Lee* court's concerns apply even more forcefully here—Mr. Harthill is older than Lee and faces a longer sentence than Lee. A 10-year sentence is particularly harsh and suffices to meet the Sentence Reform Act's goals—nothing more is necessary.

***Second***, a 10-year sentence suffices because Mr. Harthill poses little future risk to the public. After a lengthy evaluation, testing, and review of the scientific literature on recidivism, the Cosby report concludes that "Mr. Harthill's risk for future sexual misconduct is <u>low</u>," with studies pegging the risk at 1.4%–2.5%.[10] (And his actual rate is likely lower since the studies group offenders as 60-and-over. But recidivism

---

[10] Cosby Report at 19 (emphasis in original).

continually declines with age, and Mr. Harthill will be past 80 when released.)[11] That conclusion is unsurprising given the factors identified in the report:[12]

- Mr. Harthill has no criminal history;
- He has no "history of sexually or other aggressive behavior";
- He espouses no "violent or sexually coercive attitudes"—to the contrary, he expresses remorse and regret;
- He has no history of alcohol or drug abuse problems that encourage impulsive behaviors;
- He has a lengthy pre-trial compliance period with no violations.

All these factors suggest Mr. Harthill poses little future risk. That conclusion is reinforced by the drivers behind his offense. The spark for Mr. Harthill's offense appears to have been social isolation combined with feelings of inadequacy and reliance on computers as outlets. Those problems are, however, manageable. Overall, the chances that Mr. Harthill reoffends are very, very slim.

### IV. Conclusion

For the reasons above, Philip Harthill respectfully requests a sentence of 10-years incarceration followed by 5-years supervised release.

---

[11] *See id.* ("In Mr. Harthill's case, his recidivism risk is expectedly lower than these estimates. The rates of almost all crimes decrease as people age.").

[12] *Id.* at 18.

Dated: July 26, 2022.

Federal Defenders of Eastern Washington & Idaho
Attorneys for Philip Harthill

s/Colin G. Prince
Colin G. Prince, WSBA No. 43166
10 North Post Street, Suite 700
Spokane, Washington 99201
t: (509) 624-7606
f: (509) 747-3539
Colin_Prince@fd.org

SERVICE CERTIFICATE

I certify that on July 26, 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System, which will notify Assistant United States Attorneys: Ann Wick.

s/Colin G. Prince
Colin G. Prince, WSBA No. 43166
10 North Post Street, Suite 700
Spokane, Washington 99201
t: (509) 624-7606
f: (509) 747-3539
Colin_Prince@fd.org